No. 22-35749

_____
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

AARON DALE EATON,

    Plaintiff-Appellant,

       v.

EYNON, Two Rivers Correctional Institution Grievance coordinator; ROSSI, Two Rivers Correctional Institution Grievance coordinator; STARK, Two Rivers Correctional Institution Physical Plant Manager; DARCY, Two Rivers Correctional Institution Physical Plant Asst. Manager; T. BLEWETT, Two Rivers Correctional Institution Superintendent; OREGON DEPARTMENT OF CORRECTIONS; MANEY, Two Rivers Correctional Institution Provider; CYNTHIA LECLOUX, Two Rivers Correctional Institution Provider; WILLIS, Two Rivers Correctional Institution Officer; LEMMON, Two Rivers Correctional Institution Officer; ROBINSON, Two Rivers Correctional Institution Lieutenan,

    Defendants-Appellees.

_____

APPELLEES' BRIEF
_____

Appeal from the United States District Court
for the District of Oregon
_____

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
PEENESH SHAH
Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402
peenesh.h.shah@doj.state.or.us
Attorneys for Appellees

_____
_____

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.............................................................. 1

ISSUE PRESENTED FOR REVIEW .............................................................. 1

STATEMENT OF THE CASE.......................................................................... 1

    A.   Nature of the Case ............................................................... 1

    B.   Course of Proceedings and Disposition Below............................. 2

    C.   Statement of Facts ............................................................... 3

          1.   Plaintiff, who suffers from respiratory conditions, complains of mold in prison showers. .................................. 4

          2.   Defendants take measures to mitigate the mold, but plaintiff finds them inadequate. ........................................... 5

          3.   In treating plaintiff, medical providers observe no adverse health effects attributable to mold. ........................ 7

          4.   Plaintiff files an ADA claim, which the district court ultimately rejects on summary judgment............................. 7

SUMMARY OF ARGUMENT .......................................................................... 8

STANDARD OF REVIEW .............................................................................. 9

ARGUMENT ................................................................................................ 10

    I.   Plaintiff failed to carry his burden of creating a summary judgment record containing enough evidence of injury or causation to carry his burden of proof at trial. ............................. 11

          A.   Plaintiff offered insufficient evidence to support a finding that his respiratory condition objectively deteriorated during the relevant period. ................................................. 13

          B.   Plaintiff offered insufficient evidence to support a finding that any deterioration in his respiratory condition was caused by the mold............................................................. 16

    II.   The summary judgment record establishes that the state defendants provided reasonable accommodations........................ 17

    III.   Plaintiff is not entitled to any relief.............................................. 20

          A.   Plaintiff is not entitled to damages because the record does not support a finding of deliberate indifference. ........ 20

          B.   Plaintiff's requests for injunctive and declaratory relief are moot............................................................................ 21

CONCLUSION ............................................................................................. 24

i

# TABLE OF AUTHORITIES

## Cases Cited

*City of Los Angeles v. Lyons*,
  461 U.S. 95, 103 S. Ct. 1660 (1983) ................................................ 21, 22

*G & G Closed Circuit Events, LLC v. Liu*,
  45 F.4th 1113 (9th Cir. 2022) ................................................................ 12

*Gordon v. Virtumundo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) ............................................................... 10

*Green v. Branson*,
  108 F.3d 1296 (10th Cir. 1997) .............................................................. 23

*Hall v. North American Van Lines, Inc.*,
  476 F.3d 683 (9th Cir. 2007) ................................................................. 10

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ............................................................... 22

*Jay v. Intermet Wagner Inc.*,
  233 F.3d 1014 (7th Cir. 2000) ............................................................... 19

*Jones v. Williams*,
  791 F.3d 1023 (9th Cir. 2015) ............................................................... 12

*Martin v. Sargent*,
  780 F.2d 1334 (8th Cir. 1985) ............................................................... 23

*McKinnon v. Talladega County*,
  745 F.2d 1360 (11th Cir. 1984) .............................................................. 23

*McQuillion v. Schwarzenegger*,
  369 F.3d 1091 (9th Cir. 2004) ............................................................... 23

*Mogenhan v. Napolitano*,
  613 F.3d 1162 (D.C. Cir. 2010)............................................................. 19

*Mt. Graham Red Squirrel v. Madigan*,
  954 F.2d 1441 (9th Cir. 1992) ............................................................... 21

*Nidds v. Schindler Elevator Corp.*,
  113 F.3d 912 (9th Cir. 1996),
  *cert. den.*, 522 U.S. 950 (1997) ............................................................. 15

*Nolan v. Heald Coll.*,
  551 F.3d 1148 (9th Cir. 2009) .................................................................. 3

*O'Doan v. Sanford*,
  991 F.3d 1027 (9 th Cir. 2021) ................................................................. 9

*O'Shea v. Littleton*,
  414 U.S. 488, 94 S. Ct. 669 (1974) ........................................................ 22

*Orn v. City of Tacoma*,
   949 F.3d 1167 (9th Cir. 2020) ........................................................ 3

*Orr v. Bank of Am., NT & SA*,
   285 F.3d 764 (9th Cir. 2002) ................................................... 3, 10

*Rangel v. Anderson*,
   2:15-CV-81, 2016 WL 6595600,
   at *2 (S.D. Ga. Nov. 7, 2016) ................................................... 15

*Schroeder v. McDonald*,
   55 F.3d 454 (9th Cir. 1995) ........................................................ 4

*Selenke v. Med. Imaging of Colorado*,
   248 F.3d 1249 (10th Cir. 2001) ................................................. 19

*Updike v. Multnomah County*,
   870 F.3d 939 (9th Cir. 2017) ....................................... 10, 12, 20

## Constitutional and Statutory Provisions

42 U.S.C. § 12132 ........................................................................ 11

42 U.S.C. §§ 12131–12134 ............................................................ 1

## Other Authorities

Fed. R. Evid. 803(4) ..................................................................... 15

iii

## APPELLEES' BRIEF

_____

## STATEMENT OF JURISDICTION

Defendants-appellees agree with and accept plaintiff-appellant's statement of jurisdiction. (*See* App. Br. 2).

## ISSUE PRESENTED FOR REVIEW

Did the district court correctly grant summary judgment in favor of defendants on plaintiff's ADA claim?

## STATEMENT OF THE CASE

### A.    Nature of the Case

In the only claim on appeal, plaintiff seeks declaratory relief, injunctive relief, and damages (including punitive damages), against various state employees and officers under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12134. (ER-233–38). In that claim, he alleges that employees and officers of an Oregon correctional facility, acting in their official capacity, caused him injury in violation of the ADA by failing to mitigate shower mold that exacerbated his respiratory conditions. (ER-233–36; *see also* ER-5, -26–28 & n.4 (construing plaintiff's ADA claim)).

Plaintiff also alleges his ADA claim against a medical provider whose liability the district court addressed separately. (*See* ER-27). That additional defendant, Cynthia LeCloux, was represented separately before the district court

and continues to be represented separately on appeal.  This brief is filed only on behalf of defendants other than LeCloux (collectively, the state defendants).

## B.  Course of Proceedings and Disposition Below

Plaintiff commenced this action by filing a *pro se* complaint.  (C.R. 2).  By leave of the district court, (C.R. 20, 29), plaintiff amended that complaint twice, (C.R. 21, 30).  In an order not at issue on appeal, the district court then partially granted and partially denied defendants' partial motion to dismiss, allowing plaintiff leave to amend his complaint a third time.  (C.R. 46; ER-196–210).  Plaintiff then filed a third amended complaint, (C.R. 59), which the state defendants answered, (C.R. 62).  By leave of the district court, (C.R. 93), plaintiff then amended his complaint a fourth and final time, making the operative complaint his fourth amended complaint, (C.R. 96; ER-211–38; *see also* ER-6).

The state defendants then filed an answer to the fourth amended complaint, (C.R. 100), and moved for summary judgment, (C.R. 140).  Defendant LeCloux likewise moved for summary judgment.  (C.R. 162).  Those motions were supported by declarations.  (C.R. 141, 163).  Plaintiff opposed those motions, (C.R. 174–75), and all defendants replied, (C.R. 177, 179), with defendant LeCloux adding another declaration to support her motion, (C.R. 180).

After all those events—which coincided with a series of motions and orders on discovery and other matters not at issue on appeal, (*see generally* ER-244–

58)—the district court entered an order granting both motions for summary judgment. (C.R. 190; ER-4–28). Consistently with that order, the district court entered a judgment deeming the case "terminated." (C.R. 191; ER-3).

Plaintiff appeals that final judgment, challenging the district court's summary judgment ruling in favor of defendants on his ADA claim.

## C.   Statement of Facts

The following facts are drawn from those portions of the summary judgment record that contain admissible evidence or its equivalent. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The state defendants do not intend the following recital to be an admission of any facts; rather, the following recital reflects only the summary judgment standard of viewing all evidence in the light most favorable to the non-moving party.[1]

---

[1]   The state defendants reject plaintiff's factual statement for being based largely on his allegations about matters outside his personal knowledge; although plaintiff is correct that this court "must 'construe the facts in the light most favorable to the plaintiff,'" (App. Br. 3 n.1 (quoting *Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020))), a more precise articulation of that standard is one that requires construing only *evidence* in the light most favorable to the non-moving party, or plaintiff here. *See Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009) (explaining that "summary judgment must be denied if, viewing the evidence in the light most favorable to the non-moving party, there are genuine issues of material fact" (internal quotation marks omitted)). Allegations based on belief or hearsay, rather than personal knowledge—even when contained in a verified complaint—are not admissible evidence. *See Schroeder v. McDonald*, 55

*Footnote continued...*

The state defendants supplement these facts as needed in responding to plaintiff's argument.

### 1. Plaintiff, who suffers from respiratory conditions, complains of mold in prison showers.

Plaintiff was housed at Two Rivers Correctional Institution (TRCI) from August 10, 2017 until July 1, 2021, at which time he was transferred to Snake River Correctional Institution. (StateSER-16 ¶ 3). In formal grievance communications with plaintiff, a nurse observed that plaintiff's medical record documents a "long history of asthma and COPD, with corresponding and successful treatments." (StateSER-77; *see also* StateSER-4).

Beginning March 2020, plaintiff began using the TRCI grievance system to complain about mold in the showers at his unit. (StateSER-18 ¶ 11; *see also* ER-75–77). He continued filing such grievances through at least May 8, 2020. (ER-8–11).

Plaintiff submitted a declaration from a licensed medical doctor who opined that the "effect of mold growth on humans is variable, but can cause chronic upper respiratory symptoms," while those "with allergy to mold or chronic lung disease such as asthma, can have intense reactions and inflammation with mold exposure."

---

F.3d 454, 460 (9th Cir. 1995) (distinguishing between, on the one hand, allegations based on personal knowledge and otherwise admissible in evidence, and on the other hand, allegations based purely on belief).

(ER-95 ¶ 3).  That expert further explained that "remediation" of mold "may involve simple cleaning with antifungal cleaners, or removal of mold contaminated materials, repair of water damage, improved ventilation, and humidity control." (ER-96 ¶ 6).

### 2. Defendants take measures to mitigate the mold, but plaintiff finds them inadequate.

According to plaintiff, mold was discovered in the showers of his TRCI unit on February 28, 2020, and at that time, prison employees responded by "calling for the Bio-hazard orderly * * * to come clean and to decontaminate all of the Unit 2 showers."  (ER-75–76; *see also* ER-215 (complaint, alleging similar events)).

According to one of plaintiff's declarations, TRCI employees repeatedly cleaned the showers with initially satisfactory results, but the mold would return within days:

> The mold in the unit showers is still growing back every time one of the unit orderlies try to clean the showers, the showers smell and look good for about 3 to 5 days, then the smell of mildew, mold comes back once we can smell the mold all we do is look where it was and it's back again over and over physical plant will not come fix the showers.

(ER-188 (declaration dated July 24, 2020); *see also* ER-191 (similar)).

Indeed, the record contains declarations from others tasked with cleaning the showers, establishing multiple attempts to clean them.  (*See* ER-133 (declaration

from a person who "decontaminated the unit two showers about a month prior to physical plant taking photos of them on 5-8-20"); ER-134 (declaration from same person, who on July 23, 2020, describes being instructed a "few months ago to bleach the showers due to mold in them"); ER-135 (declaration from a second person, who describes "assisting in the cleaning of the handicap shower doing a 'deep clean' of the walls, seat and floor tile" on May 8, 2020); ER-136 (declaration from a third person, who describes "deep cleaning" four showers between May 8 and May 10, 2020)).

The record also contains a letter in which TRCI's superintendent advised plaintiff on July 24, 2020 that "TRCI is getting complete new shower coatings institution-wide, which will further assist in the process of keeping the showers clean." (StateSER-62; *see also* StateSER-30 (similar in letter dated September 25, 2020)). As early as June 24, 2020, plaintiff himself admitted knowledge of a plan to resolve the mold problem by having the "moldy tiles removed." (ER-86). On November 2, 2020, plaintiff executed a declaration in which he admits that TRCI employees had begun "to start * * * decontaminating" the mold "by replacing the tile in the showers." (StateSER-88; *see also* ER-159 (similar admission in declaration dated June 19, 2021); ER-187 (similar admission in declaration dated October 27, 2021)).

### 3. In treating plaintiff, medical providers observe no adverse health effects attributable to mold.

As explained by a nurse in a response to one of plaintiff's grievances, his medical record did not, as of June 24, 2020, document any "symptoms that would indicate other than exacerbation of either" his asthma or COPD. (StateSER-77; *see also* ER 11).

Similarly, defendant LeCloux submitted a declaration stating that, when she treated plaintiff on September 23, 2020, for his "regularly scheduled Asthma/COPD visit," she observed no objectively verifiable respiratory symptoms or change in his condition:

> This exam was unremarkable, except for plaintiff's complaint that it was difficult to breathe. I had plaintiff perform a peak flow test; which, despite plaintiff's poor effort, showed improvement over his previous peak flow test. Peak flow is a simple measurement of how quickly you can blow air out of your lungs. It is often used to help diagnose and monitor asthma. I also checked his respiratory rate, pulse, blood pressure, and auscultated his lungs and all were within normal limits. The normal oxygen saturation level is above 94% and the plaintiffs level was 96-100%. Additionally, I continued the plaintiff on his Short-Acting Beta Agonist inhaler for his asthma and he was also taking an antihistamine medication.

(StateSER-12 ¶ 3).

### 4. Plaintiff files an ADA claim, which the district court ultimately rejects on summary judgment.

On July 30, 2020, plaintiff filed his original complaint in this case. (C.R. 1). As explained above, the resulting litigation led to the operative complaint being the

fourth amended complaint.

As relevant here, that complaint alleged that plaintiff had been "exposed" to mold that "cause[d] injury to his respiratory system," including "breathing problems." (ER-214 ¶¶ 20-21). And in connection with that allegation, he alleged that the injuries to his "respiratory system" were caused by a failure to provide him with access to safe showers, in violation of the ADA. (ER-234 ¶¶ 133–35, 141–42). In particular, he alleged that his asthma and COPD conditions amount to protected disabilities that the ADA required the state defendants to accommodate—either by removing the mold or by transferring him to another housing unit. (ER-234 ¶ 136; ER-235 ¶ 140).

On summary judgment, the district court "agree[d]" with the state defendants' arguments that "they did not exclude [plaintiff] or deny his ability to use the shower and that [plaintiff] has presented no evidence that any exclusion or denial was by reason of his disability." (ER-28). Plaintiff now appeals from that ruling.

## SUMMARY OF ARGUMENT

The district court correctly granted summary judgment in favor of the state defendants on plaintiff's ADA claim.

First, plaintiff failed to carry his burden of creating a summary judgment record containing enough evidence of injury or causation to carry his burden of

proof at trial.  Although the summary judgment record is sufficient to establish that the showers at TRCI were affected by mold, plaintiff offers insufficient evidence to carry his burden of proving that he suffered any respiratory deterioration, and *no* evidence to carry his burden of proving that any such deterioration was connected to the mold in the showers.

 Second, the summary judgment record establishes that the state defendants provided reasonable accommodations by trying to clean the showers, remodeling them, and ultimately transferring plaintiff to another prison.  Although that process took some time, the record does not establish any unreasonable delay.

Third and finally, leaving aside the merits of plaintiff's claim, he is not entitled to any relief.  He is not entitled to damages without a showing of deliberate indifference, but the summary judgment record establishes at most negligence in responding to plaintiff's complaints.  And his claims for injunctive and declaratory relief are moot because he is no longer housed at TRCI and unlikely to be wronged again in the way he claims.

## STANDARD OF REVIEW

The state defendants agree with plaintiff that this court "reviews summary judgment rulings *de novo*."  (App. Br. 13 (citing *O'Doan v. Sanford*, 991 F.3d 1027, 1035 (9th Cir. 2021))).

The state defendants add that a court may consider only "admissible

evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

The state defendants further add that this court "may affirm on any basis supported by the record." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009); *see also Hall v. North American Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007) (noting that, when this court may affirm on any basis supported by the record, the basis for affirmance need not have been relied upon by the district court).

## ARGUMENT

To prevail on his claim under Title II of the ADA, plaintiff must establish three elements:

(1) he is a qualified individual with a disability;

(2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and

(3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (internal quotation marks omitted; indentation and line breaks modified). Those elements are drawn from the statute, which provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

The state defendants here were entitled to summary judgment on plaintiff's ADA claim for three independent reasons. First, plaintiff failed to carry his burden of creating a summary judgment record containing enough evidence of injury or causation to carry his burden of proof at trial. Second, the summary judgment record establishes that the state defendants provided reasonable accommodations by trying to clean the showers, remodeling them, and ultimately transferring plaintiff to another prison. Finally, plaintiff is not entitled to any relief: his claim for injunctive relief is moot because he is no longer housed at TRCI, and the attempted accommodations here preclude finding the kind of deliberate indifference necessary to any damage claim.

## I.    Plaintiff failed to carry his burden of creating a summary judgment record containing enough evidence of injury or causation to carry his burden of proof at trial.

Although the district court's ruling on plaintiff's ADA claim was terse, that ruling reflected a conclusion that plaintiff failed to carry his burden of proving that his disability made him unable to use the showers in his housing unit. (*See* ER-28 (agreeing that plaintiff "presented no evidence that any exclusion or denial was by reason of his disability")). Plaintiff contemplates as much when arguing that the

district court "resolved record disputes" by concluding that plaintiff "faced no barriers in showering." (App. Br. 15).

That ruling is an application of the fundamental summary-judgment rule that a moving party can prevail if it "*either* produce[s] evidence negating an essential element of the nonmoving party's claim * * * or show[s] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Jones v. Williams*, 791 F.3d 1023, 1030–31 (9th Cir. 2015) (emphasis added; internal quotation marks omitted); *see also G & G Closed Circuit Events, LLC v. Liu*, 45 F.4th 1113, 1115 (9th Cir. 2022) (when nonmoving party had ultimate burden of persuasion at trial but "failed to produce evidence to support its claim," summary judgment was appropriate).

Here, plaintiff bore the burden of proving the elements of his ADA claim at trial. *See generally Updike*, 870 F.3d at 949. But the district court correctly ruled that the evidence he marshalled in response to the summary judgment motion was insufficient. In disputing the district court's ruling, plaintiff offers ample record support to establish (at least for summary judgment purposes) that the showers in his housing unit were (at least at times) a site of mold growth. (*See* App. Br. 15).

What he fails to identify, however, is any record support for two essential facts: (1) that he suffered any kind of respiratory injury as alleged in his complaint, (*see* ER-214 ¶¶ 20-21); or (2) that any such injury was *caused*—again,

as alleged in his complaint, (*see* ER-214 ¶ 20)—by exposure to mold in the showers.  Without establishing those facts, he cannot establish that the mold in the showers impaired his access to those facilities—or, more to the point, that his respiratory disabilities caused him to be excluded from TRCI's showers.

### A.    Plaintiff offered insufficient evidence to support a finding that his respiratory condition objectively deteriorated during the relevant period.

Without doubt, the record would support a finding that plaintiff suffers from a long history of respiratory ailments—for example, a nurse has stated in a formal TRCI grievance response complaint that plaintiff's medical record documents a "long history of asthma and COPD, with corresponding and successful treatments."  (StateSER-77; *see also* StateSER-4).

But the record contains nothing to support a finding that his respiratory condition had objectively deteriorated during the period when he was complaining of mold in the showers.  The same nurse said in the same communication that, as of June 24, 2020, plaintiff had "not presented any additional symptoms that would indicate other than exacerbation of either condition."  (StateSER-77).  Similarly, defendant LeCloux submitted a declaration stating that, when she treated plaintiff on September 23, 2020, for his "regularly scheduled Asthma/COPD visit," she observed no objectively verifiable respiratory symptoms or change in his condition despite his subjective complaints of breathing problems; to the contrary, she found

that "despite plaintiff's poor effort, [he] showed improvement over his previous peak flow test," which is a test "often used to help diagnose and monitor asthma." (StateSER-12 ¶ 3; *see also id*. ("The normal oxygen saturation level is above 94% and the plaintiff's level was 96-100%.")).

Although the state defendants had no burden of disproving deterioration of plaintiff's respiratory condition, the foregoing evidence was more than enough to require plaintiff to offer meaningful, admissible evidence that could support a finding of such deterioration before his claim could proceed past summary judgment. Yet he offered nothing of the sort—certainly no admissible evidence from a qualified medical expert who had diagnosed any such deterioration. Indeed, the only expert evidence he offered established only a general *possibility* that mold can, in some cases, cause respiratory conditions to deteriorate. (ER-95 ¶¶ 3, 6). That expert offered no opinion whether plaintiff specifically had suffered any respiratory deterioration.

Beyond that one insufficient expert opinion, plaintiff marshalled little more than unqualified, subjective evidence that would be insufficient to carry his burden on a record containing the objective evidence, discussed above, that the state defendants marshalled. In the argument section of his brief, he offers primarily his own subjective (and necessarily self-serving) belief. (*See* App. Br. 15 (citing ER-

193; ER-227)).[2]  Perhaps such beliefs are enough to survive a motion to dismiss,

but they are insufficient to survive summary judgment, especially on a record that

contains expert medical evidence establishing a lack of objective symptoms

consistent with plaintiff's claimed belief.  *See Nidds v. Schindler Elevator Corp.*,

113 F.3d 912, 916 (9th Cir. 1996), *cert. den.*, 522 U.S. 950 (1997) (explaining that,

for an issue to be "genuinely" disputed, a plaintiff must produce "sufficient

---

[2]     The closest plaintiff can come to objective medical evidence is by recounting inadmissible hearsay in his verified complaint and two supporting declarations:  his verified complaint recounts a nurse stating on September 1, 2020, that his "left lung was damaged," (ER-227 ¶ 103); a February 28, 2022, declaration recounts a recent pulmonary function test showing what he describes as a "preliminary result of abnormal breathing conditions," (ER-194); and a June 16, 2022, declaration recounts a discussion in which a medical professional may have discussed "damage" to his respiratory system, (StateSER-8).  But plaintiff cannot offer those out-of-court statements for their truth.  *See Rangel v. Anderson*, 2:15-CV-81, 2016 WL 6595600, at *2 (S.D. Ga. Nov. 7, 2016) (surveying opinions, including from Seventh and Eighth Circuits, to explain that the hearsay exception in Fed. R. Evid. 803(4) applies "only to statements made by a patient to his or her physician or to other parties—not to statements made by a physician to his or her patient").

In any event, plaintiff's recounting of his medical tests is inadmissible because he is not qualified to interpret those results himself.  Moreover, even if that evidence were admissible to support finding respiratory deterioration, none of it (especially the tests performed in 2022) would be competent to establish any connection to shower mold.  The same is true of a declaration from a fellow adult-in-custody who claims to have noticed a deterioration in plaintiff's respiratory ability.  (*See* ER-58).  That declarant is not qualified to objectively diagnose respiratory deterioration, to exclude the possibility of malingering, or to attribute causation.  That evidence is therefore not competent to rebut the expert evidence marshalled by the state defendants.

evidence that a reasonable jury could return a verdict" in his favor, but "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted" (internal quotation marks omitted)).

### B. Plaintiff offered insufficient evidence to support a finding that any deterioration in his respiratory condition was caused by the mold.

Even assuming that the summary judgment record could support a finding of respiratory deterioration, that record is even more lacking on the question of causation.  Here as well, plaintiff relies on little more than his own unqualified diagnosis attributing his perceived ailments to the mold.  (*See, e.g.*, ER-145 (unsworn out-of-court statement to that effect), ER-193 (similar, in a sworn statement)).  He offers no medical opinion—not even in the form of inadmissible hearsay[3]—directly attributing any respiratory ailment to mold exposure.  His only expert evidence, again, states only that such ailments can possibly be attributed to mold exposure, not that plaintiff specifically suffered any respiratory deterioration at all, let alone due to mold exposure.  (*See* ER-95 ¶¶ 3, 6).

---

[3]     For example, plaintiff offers nothing like a declaration that one of his fellow adults-in-custody executed, recounting an out-of-court conversation with a medical professional that could be construed as diagnosing injury caused by mold exposure.  (*See* ER-148).  Even if a fellow adult-in-custody suffered injury attributable to mold exposure, that does not amount to evidence that plaintiff did as well.  And, of course, even that other declaration is not evidence competent to establish mold-attributable injury suffered by the fellow adult-in-custody; using it to prove that fact would require ignoring the evidentiary rules excluding hearsay.

Indeed, to the extent that the record contains any evidence on this subject, the only inference it supports is that plaintiff suffered no injury resulting from mold exposure. On March 9, 2022, plaintiff submitted a declaration claiming that a doctor had "just started the process of diagnosing exposure to mold with an order of imaging of lungs which has been done waiting on results." (ER-146). Yet, as of the August 30, 2022, date of the order on appeal, plaintiff had failed to adduce any evidence of such a diagnosis. That failure supports inferring that no such diagnosis resulted from the imaging that had been performed months earlier.

Given the utter lack of record evidence on this essential element of plaintiff's claim, the state defendants were entitled to summary judgment.

## II. The summary judgment record establishes that the state defendants provided reasonable accommodations.

The district court's terse analysis of plaintiff's ADA claim also reflects a ruling that the state defendants provided a reasonable accommodation to the extent that the mold in the showers combined with his respiratory problems to exclude him from access to those facilities. (*See* ER-28 (agreeing that the state defendants "did not exclude [plaintiff] or deny his ability to use the shower")).

In plaintiff's complaint, he alleges that the reasonable accommodations that he requested under the ADA were either removal of the mold or transfer to another housing unit. (ER-234 ¶ 136; ER-235 ¶ 140). But the record establishes that the state defendants consistently made efforts to offer precisely those

18

accommodations. As outlined in the factual discussion above, the state defendants made multiple attempts to clean the mold, (*see* ER-133–36), which plaintiff admits were at least temporarily successful, (*see, e.g.*, ER-188). Further, the state defendants implemented a plan to remodel the showers to better facilitate cleanliness, (StateSER-62; *see also* StateSER-30). Plaintiff himself admits that TRCI employees had made progress on that plan as early as November 2020. (StateSER-88; *see also* ER-159 (similar admission in declaration dated June 19, 2021); ER-187 (similar admission in declaration dated October 27, 2021)). Those efforts were consistent with what plaintiff's own expert opined was required to remediate mold. (*See* ER-96 ¶ 6 (explaining that "remediation" of mold "may involve simple cleaning with antifungal cleaners, or removal of mold contaminated materials, repair of water damage, improved ventilation, and humidity control")).

And although plaintiff disputes the efficacy and timeliness of those efforts, he was ultimately transferred to another institution on July 1, 2021. (StateSER-16 ¶ 3).

Thus, rather than discriminating against plaintiff, the state defendants consistently attempted to provide reasonable accommodations. And although those efforts were, in plaintiff's view, not completely successful or timely, the ADA's reasonableness standard did not require the state defendants to immediately and successfully resolve plaintiff's complaints—especially when those complaints

pertained to a problem as intractable as shower mold, raised for the first time in the early days of a once-in-a-century pandemic. Just as a denied accommodation must be reasonable to make out a discrimination claim, a delay in providing that accommodation must be unreasonable to support such a claim. *See, e.g.*, *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) (where the accommodation at issue was a change in the required duties of employment, no discrimination resulted from the delay in waiting "for a position to become available which met [the plaintiff's] work restrictions and for which [the plaintiff's] seniority qualified him"); *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1262–63 (10th Cir. 2001) (assessing whether a delay in providing an accommodation to an employee amounts to a violation of the ADA; concluding that the answer depends on the "length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith"); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (similar).

Here, the state defendants made efforts to mitigate the mold, and they ultimately transferred him to another institution. Those facts reflect a good-faith attempt to accommodate plaintiff's disability, and any delay was not unreasonable enough to amount to discrimination.

## III.    Plaintiff is not entitled to any relief.

Finally, even if plaintiff's ADA claim were supported by sufficient evidence, summary judgment was nevertheless appropriate because he was not entitled to the relief he sought.  Of the relief prayed for in his complaint, the remedies relevant to his ADA claim included damages, a declaration that defendants "violated the ADA," and an injunction ordering the superintendent of TRCI to "create a qualified shower clean up and sanitation crew."  (ER-237).  As explained below, none of that relief is available.

### A.    Plaintiff is not entitled to damages because the record does not support a finding of deliberate indifference.

To recover money damages on his claims, plaintiff must show not only discrimination, but that the state defendants "intentionally or with deliberate indifference fail[ed] to provide meaningful access or reasonable accommodation" to him.  *Updike v. Multnomah County*, 870 F.3d 939, 950–51 (9th Cir. 2017) (internal quotation marks omitted).  Mere negligence is insufficient to meet that standard.  *Id*.

Again, the above facts establish that the state defendants attempted to mitigate the mold and ultimately moved plaintiff to another facility.  To the extent that their efforts were not immediately successful or their responses took time, those facts reflect nothing more than the sort of negligent "bureaucratic slippage" that cannot amount to deliberate indifference.  *Id*. at 951–52 (internal quotation

marks omitted).

**B.     Plaintiff's requests for injunctive and declaratory relief are moot.**

Nor is plaintiff entitled to his requested injunctive or declaratory relief.

First, the only injunctive relief he specifically requested in his complaint was an

order to create a "qualified shower clean up and sanitation crew." (ER-237). But

the record shows that TRCI already has a designated "bio-hazard orderly" to fill

that role. (ER-75–76).

But more importantly, plaintiff has been transferred out of TRCI to another

correctional facility. (StateSER-16 ¶ 3). Thus, any claim for injunctive relief

against TRCI or its superintendent will not have any practical effect on plaintiff,

rendering that claim moot. *See Mt. Graham Red Squirrel v. Madigan*, 954 F.2d

1441, 1450 (9th Cir. 1992) (dismissing appeal as moot when "a reversal of its

denial of preliminary injunctive relief would have no practical consequences").

Put differently, plaintiff is not entitled to equitable relief in the form of an

injunction because such equitable relief "is unavailable absent a showing of

irreparable injury, a requirement that cannot be met where there is no showing of

any real or immediate threat that the plaintiff will be wronged again." *City of Los

Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660 (1983). That standard cannot

be satisfied with mere speculation. *Id*. That additional requirement serves a

purpose beyond that which motivates the constitutional standing requirement: it

serves to prevent federal courts from unnecessarily disturbing the "proper balance between state and federal authority" and from unnecessarily interfering with the functions of state officers and state courts, over which federal court supervision can often prove "unworkable." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999).

Here, only speculation could support any possibility that plaintiff will again be subject to moldy showers at TRCI. Again, he has been transferred away from that institution, and even within that institution, the record shows that measures have been or are being taken to mitigate that problem going forward. Thus, plaintiff cannot show the "likelihood of substantial and immediate irreparable injury" that is necessary to obtaining injunctive relief. *See Lyons*, 461 U.S. at 111.

Indeed, where future harm is only speculative, a plaintiff lacks standing to seek injunctive relief. To have standing to seek injunctive relief, a party must establish at least some likelihood of repeated injury. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief" unless it is accompanied by "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669 (1974); *see id.* at 496–97 (explaining that, although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," more is required to establish standing for injunctive relief).

And when injunctive relief is moot, a declaratory judgment also cannot proceed because a judicial pronouncement would be an impermissible "advisory opinion" when the "possibility of prospective effect would be superfluous." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 & n.3 (9th Cir. 2004) (citing *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997), which discussed the need for a live case or controversy to support declaratory judgment); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit); *McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding that a prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail").

In short, plaintiff is entitled to none of the relief he requests, and for that reason as well, this court should affirm summary judgment in favor of the state defendants.

24

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General


/s/  Peenesh Shah
_____

PEENESH SHAH
Assistant Attorney General
peenesh.h.shah@doj.state.or.us

Attorneys for Defendants-Appellees
Eynon, Two Rivers Correctional Grievance
Coordinator, et al

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Appellees' Brief is proportionately spaced, has a typeface of 14 points or more and contains 5,348 words.

DATED:  March 15, 2023

/s/  Peenesh Shah
_____
PEENESH SHAH
Assistant Attorney General
peenesh.h.shah@doj.state.or.us

Attorneys for Defendants-Appellees
Eynon, Two Rivers Correctional Grievance
Coordinator, et al

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
PEENESH SHAH
Assistant Attorney General
1162 Court St.
Salem, Oregon 97301
Telephone: (503) 378-4402

Counsel for Appellees

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| AARON DALE EATON, | U.S.C.A. No. 22-35749 |
| Plaintiff-Appellant, | STATEMENT OF RELATED CASES |
| v. | |
| EYNON, Two Rivers Correctional Institution Grievance coordinator; ROSSI, Two Rivers Correctional Institution Grievance coordinator; STARK, Two Rivers Correctional Institution Physical Plant Manager; DARCY, Two Rivers Correctional Institution Physical Plant Asst. Manager; T. BLEWETT, Two Rivers Correctional Institution Superintendent; OREGON DEPARTMENT OF CORRECTIONS; MANEY, Two Rivers Correctional Institution Provider; CYNTHIA LECLOUX, Two Rivers Correctional Institution Provider; WILLIS, Two Rivers Correctional Institution Officer; LEMMON, Two Rivers Correctional Institution Officer; ROBINSON, Two Rivers Correctional Institution Lieutenan, | |
| Defendants-Appellees. | |

Pursuant to Rule 28-2.6, Circuit Rules of the United States Court of Appeals for the Ninth Circuit, the undersigned, counsel of record for Appellees, certifies that he has no knowledge of any related cases pending in this court.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General


/s/  Peenesh Shah
_____
PEENESH SHAH
Assistant Attorney General
peenesh.h.shah@doj.state.or.us

Attorneys for Defendants-Appellees
Eynon, Two Rivers Correctional Grievance
Coordinator, et al

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2023, I directed the Appellees' Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Peenesh Shah
_____
PEENESH SHAH
Assistant Attorney General
peenesh.h.shah@doj.state.or.us

Attorney for Defendants-Appellees
Eynon, Two Rivers Correctional Grievance
Coordinator, et al

SPH:bmg/746525920