No. 22-35749

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

AARON DALE EATON,

*Plaintiff-Appellant*,

v.

TWO RIVERS CORRECTION INSTITUTION GRIEVANCE
COORDINATOR EYNON, et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Oregon
No. 2:20-cv-1251-SI
District Judge Michael H. Simon

**APPELLANT'S REPLY BRIEF**

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
202-455-4399
samuel@rightsbehindbars.org

*Attorney for Plaintiff-Appellant Aaron Eaton*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

ARGUMENT .................................................................................................. 1

    I.    The Record Contains Contested Facts on Eaton's Injury as a Result of Black Mold, and, Regardless, Such an Injury is Not an Element of a Title II ADA Claim ................................................................................................... 1

    II.    Defendants Did Not, as a Matter of Law, Reasonably Accommodate Eaton's Disabilities ............................................................................... 6

    III.    Eaton Demonstrated that Defendants Were Deliberately Indifferent ........ 11

CONCLUSION ............................................................................................. 15

CERTIFICTE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012) .................... 6

*Bostwick v. Oregon Dep't of Corr.*, No. 3:11-CV-152-KI, 2012 WL 2260994 (D. Or. June 18, 2012); ................................................................................................ 10

*Duvall v. Cty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) ................................. 11, 14

*Enriching, Inc. v. City of Fountain Valley*, 151 Fed. App'x 523 (9th Cir. 2005)..... 7

*Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998) ................................. 14

*Jay v. Rodriguez*, No. 6:22-CV-469-SB, 2022 WL 17834314 (D. Or. Nov. 14, 2022) ...................................................................................................................... 10

*Obataiye-Allah v. Oregon Dep't of Corr.*, No. 2:19-CV-68-JR, 2020 WL 1532287 (D. Or. Mar. 31, 2020) ............................................................................................ 10

*Pierce v. Cnty. of Orange*, 526 F.3d 1190 (9th Cir. 2008) ..................................... 7

*Quick v. San Francisco Superior Ct.*, 65 F. Supp. 3d 907 (N.D. Cal. 2014) ......... 13

*Sandoval v. Cnty. of San Diego*, 985 F.3d 657 (9th Cir. 2021) .............................. 2

*Sheehan v. City and Cnty. of San Francisco*, 743 F.3d 1211 (9th Cir. 2014) .......... 7

*Tennessee v. Lane*, 541 U.S. 509 (2004)................................................................. 5

*United States v. Sandoval-Mendoza*, 472 F.3d 645 (9th Cir. 2006) ....................... 3

*Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) .................................................. 7

*Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807 (9th Cir. 1999) ................. 7, 12

**Other Authorities**

Fed. R. Evid. 801(d)(2)(A)....................................................................................... 2

Fed. R. Evid. 702 ..................................................................................................... 2

# ARGUMENT

Defendants' answering brief does not meaningfully contest the two main issues presented in Eaton's opening brief. They argue instead for three alternative bases for affirmance, which this brief answers in turn. The district court erred, and this Court should reverse and remand for further proceedings.

**I. The Record Contains Contested Facts on Eaton's Injury as a Result of Black Mold and, Regardless, Such an Injury is Not an Element of a Title II ADA Claim.**

Defendants argue first that Eaton cannot "carry his burden of creating a summary judgment record containing enough evidence of injury or causation [of injury]." Ans. Br. 11. First, this conclusion would require this Court to resolve disputed facts. Second, suffering an injury is simply not an element of a Title II ADA claim.

First, Eaton has at the very least created a fact dispute on whether black mold injured him. He alleged that shortly after black mold appeared in his showers, he "developed a sore throat, headaches, itchy skin, diarrhea, confusion, nausea, and allergy type symptoms" in addition to "wheezing and breathing problems." ER–214. He promptly informed the prison that these symptoms, which are consistent with black mold exposure, started just as the black mold appeared. ER–75–77; ER–216. Staff confirmed the presence of mold in the showers. *See, e.g.*, ER–9. It is undisputed that Eaton has a history of respiratory problems, *see* Ans. Br. 13, and that mold

1

exposure is particularly dangerous for people with such a history, ER–97. Other prisoners declared that they too saw the mold and got sick from it. ER–189; ER–148. Through the fall of 2020, evidence shows that the mold remained unabated, ER–134; ER–188, and that Eaton's ability to breathe was deteriorating. ER–145; ER–191.[1]

Defendants attempt to escape what is clearly a contested fact issue by arguing multiple times that Defendants provided "qualified expert evidence" that bore on this exact question and Eaton did not. *See* Ans. Br. 15. They did no such thing. "Qualified medical expert" is a term of art: it means someone qualified by Federal Rule of Evidence 702 to testify as to reliable expert opinion testimony. *See United*

---

[1] Defendants made no objections to the admissibility of any of Eaton's evidence in the district court. On appeal, they suggest that Eaton's key evidence is inadmissible, *see* Ans. Br. 14, although they do not go through Eaton's evidence item-by-item to argue exactly what is inadmissible. Nor do they explain how their contention is consistent with this Court's holding that if "the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). Defendants' objections, even were they not waived or obviated by the rule described in *Sandoval*, would be without merit because the Oregon Department of the Corrections (ODOC) is a defendant in this action and the statements of its employees are admissible as statements of party-opponents. *See* Fed. R. Evid. 801(d)(2)(A). Further complicating Defendants' argument is that they heavily rely on the same type of evidence that they claim is inadmissible. *See* Ans. Br. 13 (relying on an out-of-court statement from an ODOC employee that Eaton "had not presented any additional symptoms that would indicate other than exacerbation of either condition").

*States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006). The nurses whose record evidence Defendants rely on were never qualified as experts in the district court. Nor could they have been: the two nurses were not experts in respiratory issues and there is no reason to believe they knew anything about mold. Additionally, one of the nurses never examined Eaton and appeared to not even bother to check his medication chart and the other saw him only twice but left the prison before follow-up tests were done and explicitly disclaimed knowing what ended up happening to him. SER–77; SER–12. Neither testified as to any issue with mold or what caused his respiratory problems.

Defendants also suggest that only they have "objective" evidence as to Eaton's injury, but this purportedly objective evidence fails to establish the kind of evidentiary heft compelling enough to justify summary judgment. Defendants rely on just two pieces of "objective" evidence: the first is a grievance response from a staff nurse to Eaton telling him that he had "not presented any additional symptoms that would indicate other than exacerbation of either condition"[2] and that the "treatments prescribed to" him were sufficient. SER–77. Both responses suffer from significant factual disputes. First, Eaton wrote in his grievance that he had never actually been seen in-person by a nurse since the beginning of the pandemic—and,

---

[2] This phrase, with its double-negative, technically means that his conditions *were* exacerbated, but Defendants suggest that she meant the opposite, which the context appears to support.

thus, the mold in the showers—so it is unclear what support the grievance officer could have for her claim. SER–76. Second, Eaton wrote that he was not receiving Zyrtec, which prison documentation supported. SER–74–75. Zyrtec is one of the "treatments prescribed to" Eaton that the grievance officer found sufficient. SER–77.

The second piece of "objective" evidence is an affidavit from a family nurse who was employed at TCRI for two months in 2020, left, and then returned for two months in 2021. SER–12. She saw Eaton once in September and once in October 2020. *Id.* She wrote in an affidavit prepared for this litigation that Eaton had complained about mold and breathing problems in both visits but that the exam was unremarkable other than these comments and his history of respiratory illness. *Id.* She also provided him a "flow test," which "showed improvement over his previous peak flow test." *Id.* She never explained when this previous peak flow test took place, so the meaning of this comparison is unclear. She ordered follow-up tests but wrote that her "time working at TRCI was limited, and therefore [her] ability to follow plaintiff[']s course was hindered." *Id.* Defendants cite to no contemporaneous records documenting these visits or any documentation of the follow-up visits that the nurse ordered. The nurse offered no opinions on whether he had been harmed from exposure to mold.

Defendants contrast this testimony with Eaton's "own subjective (and necessarily self-serving) belief." Ans. Br. 14. But Defendants' only evidence is from their own staff defending themselves and their department from liability, which are no less self-serving. Furthermore, this argument leaves unclear exactly how Eaton could demonstrate an injury—he was imprisoned and could not see an outside doctor, and Defendants never let him see a prison doctor despite his many requests to do so. SER–76–77.

Perhaps more important than the inadequacy of "objective" or "expert" evidence to establish an affirmance for Defendants, however, is that Defendants have invented this element of a Title II ADA claim out of thin air. Their own answering brief demonstrates as much. *Compare* Ans. Br. 17 (describing injury as "an essential element of plaintiff's claim") *with* Ans. Br. 10 (reciting the "three elements" of an ADA claim, which do not mention proof of injury.)

An analogy to a paradigmatic Title II claim demonstrates the obviousness of this error. In *Tennessee v. Lane*, mobility-impaired people could not reach the second floor of a courthouse, home to essential services, leaving them to choose between being excluded from the services or embarrassing and potentially injuring themselves by crawling or being carried up the stairs. 541 U.S. 509, 513–14 (2004). The plaintiffs did not, nor did the Court suggest they had to, allege that they did crawl up the stairs and were physically injured in the process to demonstrate a lack

5

of meaningful access. *See also Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134–35 (9th Cir. 2012).

Eaton was analogously forced to choose between using a service that caused him harm and risked even worse harm and not using the service at all by foregoing bathing. This, Eaton argued in his opening brief, demonstrates a lack of meaningful access under the second element of a Title II ADA claim. Op. Br. 13–15. Defendants do not even engage in the correct framing of the legal issue, never using the phrase meaningful access in their answering brief. This Court should not affirm on the alternative ground that Eaton was insufficiently injured by black mold, both because factual disputes still exist on this issue and because this requirement has no basis in the law of Title II of the ADA.

## II. Defendants Did Not, as a Matter of Law, Reasonably Accommodate Eaton's Disabilities.

Defendants argue that the district court implicitly held that "the state defendants provided a reasonable accommodation." Ans. Br. 17. This interpretation strains credulity—the court's ADA analysis was a single sentence long and neither the phrase reasonable accommodation nor any of its synonyms appear anywhere in the opinion. Regardless, this Court would err in affirming the district court on this alternative ground.

The ADA does not create liability for all failures to accommodate, but only those where an accommodation was reasonable. *Enriching, Inc. v. City of Fountain*

6

*Valley*, 151 Fed. App'x 523 (9th Cir. 2005). Whether a particular accommodation is reasonable "depends on the individual circumstances of each case" and "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations" they seek. *Wong v. Regents of the Univ. of Cal.,* 192 F.3d 807, 818 (9th Cir. 1999). A plaintiff bears "the initial burden of producing evidence that a reasonable accommodation was possible." *Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002). "Thereafter, the burden shift[s] to the [defendants] to produce rebuttal evidence that the requested accommodation was not reasonable." *Id.*; *see also Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008). For example, defendants might show that an accommodation is not reasonable because it would "require a fundamental alteration or would produce an undue burden." *Pierce*, 526 F.3d at 1217. "[M]ere speculation that a suggested accommodation is not feasible" does not satisfy defendants' burden. *Wong*, 192 F.3d at 818 (quoting *Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir.1993)) (cleaned up). Whether or not an accommodation was reasonable is almost always left for a fact-finder. See *Sheehan v. City and Cnty. of San Francisco*, 743 F.3d 1211, 1233 (9th Cir. 2014), *rev'd in part on other grounds*, *City and Cnty. Of San Francisco v. Sheehan*, 575 U.S. 600 (2015) (citing *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010)) (reversing a grant of summary judgment in part because that "the reasonableness of an accommodation is ordinarily a question of fact").

7

Eaton swears that on February 26, 2020, after he first got sick, Defendant Stark refused to inspect the showers himself or send anyone else to do so despite his own staff sending him emails and work orders on the mold. ER–214; ER–200. After Stark refused to inspect the showers, on February 28 Officer Willis instructed Larry Beasley, TRCI's "Bio-Hazard Orderly" to clean the showers instead. ER–215; ER–200; ER–75; ER–134. Beasley's cleaning, however, did not remove the mold. ER–200.

In the ensuing months, Eaton received mixed messages from different TRCI staff, which ultimately did not result in the mold being remediated. On May 12, 2020, Eaton received an official letter from ODOC written by the Superintendent of TRCI, Tyler Blewett, stating, "We will be moving forward in preparing a plan to keep our [i]nstitution to a high level of cleanliness." ER–219-20. Eaton alleges that on May 31, Robinson confirmed that TRCI was purporting to remove the shower tiles contaminated with black mold. ER–86; ER–201–02. But on June 10, despite previous acknowledgement of the mold, Defendant Stark filed a response to Eaton's grievances, stating that he conducted a visual inspection of the showers and that "there was no visible discoloration or other notable characteristics" that correlate to mold. ER–82. Although Robinson denied the presence of mold in his June 10 correspondence, Eaton received a response to his grievance appeal on June 11, 2020,

8

stating that "masks have been provided to all [prisoners] to assist with minimizing risks," referring to the health effects of the mold. ER–113.

By July 2020, the mold continued to progress, and staff did little to clean or manage the mold. Larry Beasley stated in a sworn declaration on July 23, 2020, that he had not been instructed to decontaminate the showers since he last cleaned it in May, even though "the officers know that the mold is back." ER–134. On July 24, 2020, Eaton also submitted a declaration that the mold in the showers continued to grow back even when the showers were cleaned. ER–188. He stated that the showers appeared fine for three to five days after cleaning and then the mold returned. *Id.* That same day, Blewett sent a letter to Eaton stating that "Mr. Stark's review [of the showers] showed that anything discovered by Lt. Robinson was remedied." ER–122. On August 26, 2020, a final grievance appeal response was filed concurring with the previous denials of Eaton's grievance. ER–119. These intermittent, contradictory, and ultimately dismissive attempts to remediate the black mold in Eaton's shower do not constitute a reasonable accommodation as a matter of law.

Defendants' argument to the contrary in describing the state's efforts to clean the showers also suffers from a key factual error. They write that "TRCI employees repeatedly cleaned the showers with initially satisfactory results, but the mold would return." Ans. Br. 5. They cite a declaration, however, that explains, as did Eaton in his opening brief, that this cleaning was being done not by "TCRI employees" but

9

by the prisoners themselves. It was the "orderlies" that were attempting to clean the showers, and the term orderly refers in Oregon to incarcerated laborers. *See, e.g.*, *Obataiye-Allah v. Oregon Dep't of Corr.*, No. 2:19-CV-68-JR, 2020 WL 1532287, at *4 (D. Or. Mar. 31, 2020); *Bostwick v. Oregon Dep't of Corr.*, No. 3:11-CV-152-KI, 2012 WL 2260994, at *1 (D. Or. June 18, 2012); *Jay v. Rodriguez*, No. 6:22-CV-469-SB, 2022 WL 17834314, at *1 (D. Or. Nov. 14, 2022), *report and recommendation adopted*, No. 6:22-CV-469-SB, 2022 WL 17832214 (D. Or. Dec. 21, 2022). Not only were prisoners left to clean up the mold themselves but were left to do so without protective gear. ER–135; ER–126–27; ER–218. This did not constitute a reasonable accommodation by Defendants to accommodate Eaton's disability.

Nor did Eaton's eventual transfer to a different prison seventeen months after he began getting sick from black mold constitute a reasonable accommodation. Defendants cite to no evidence that the decision to transfer him was even in response to his requests rather than as a routine part of prison administration.

Defendants also mention in passing and without citation that their failure to accommodate is justified by an "intractable" black mold problem and in the midst of a global pandemic. Ans. Br. 19. As explained *supra*, the reasonableness of an accommodation must be considered in light of the context surrounding it. Defendants cite no evidence, however, on whether the black mold problem was

10

intractable or whether the COVID-19 pandemic disrupted their efforts to remediate it. For the latter issue, Eaton argued the opposite—that exposing someone with respiratory disabilities to toxic mold was particularly unreasonable in light of the existence of a respiratory pandemic. ER–87. It is also difficult to imagine why a global pandemic made respiratory cleanliness less of a priority rather than more of one. Regardless, Defendants cannot rely on speculation at this stage or seek inferences in their favor to justify the conclusion that their accommodation was reasonable as a matter of law.

### III. Eaton Demonstrated that Defendants Were Deliberately Indifferent.

Finally, Defendants argue that Eaton has no available remedy, because a) his injunctive claims are moot as he has since been transferred to another facility; and b) he cannot claim damages because he has not demonstrated deliberate indifference. *See* Ans. Br. at 20. Defendants are correct about the injunctive relief, but wrong about damages: Eaton has established a triable issues of fact as to whether Defendants were deliberately indifferent.

To claim damages under the ADA, a plaintiff must demonstrate that an entity intentionally discriminated against him, which is to say, was deliberately indifferent to his need for an accommodation. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001). For purposes of the ADA, "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a

11

failure to act upon that [] likelihood." *Id.* at 1139. A "plaintiff has satisfied the first element of the deliberate indifference test" once he has "alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation)" and "the public entity is on notice that an accommodation is required." *Id*. To satisfy the second element, the "failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*. Defendants do not contest the first prong (that Eaton alerted them to his need for an accommodation), but do contest the second—that is, they argue that they took appropriate action, or, to the extent that they did not, that their failure was mere negligence. *See* Ans. Br. at 20.

The record does not support Defendants' argument that, as a matter of law, they took appropriate action. In the context of the deliberate indifference prong of the ADA, this Court has held that "a public entity does not 'act' by proffering just any accommodation." *Duvall*, 260 F.3d at 1139. An entity still fails to act if it offers accommodations that are "inadequate," *id.* at 1140, i.e., accommodations that fall short of what is "*necessary* to enable'" the plaintiff to have meaningful access to programs, services, or activities. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999), (quoting *Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir.1993)) (internal quotations omitted) (emphasis in the original). That means, as courts have explained, that an entity fails to act even if a plaintiff "in some instances

12

… received one of the alternative accommodations [they] requested," but "in other instances … did not." *Quick v. San Francisco Superior Ct.*, 65 F. Supp. 3d 907, 909 (N.D. Cal. 2014).

Here, Defendants argue that their attempts at accommodation were reasonable because they "attempted to mitigate the mold and ultimately moved [Eaton] to another facility." *See* Ans. Br. at 20. Neither the attempts or transfer are enough to establish this conclusion as a matter of law. First, the attempts to mitigate (that is, the proffered accommodations) were inadequate. As Eaton and others repeatedly informed them, the mold in the showers continued to grow back even when the showers were cleaned—possibly in part because ODOC assigned the job to prisoners who did not have training or proper equipment to abate. *See, e.g.*, ER–188; ER–126–27; ER–218. The record suggests that the prison may also have attempted to mitigate the mold by distributing masks to prisoners. ER–113. But that "accommodation," if it did happen, is highly unlikely to have adequately addressed the issue given that the mold was in the prison showers. ER–113. Third, Defendants in some instances took no action at all. ER–214; ER–200; ER–134. And finally, Eaton's transfer came too late. Eaton reported the problem with black mold in February 2020, and he was not transferred until July 2021. ER–214; ER–200; SER–16. A transfer one and a half years after the need for an accommodation was reported is arguably *in*action, and certainly not "action" within the meaning of the ADA as a matter of law.

13

Defendants argue, in the alternative, that any failure to act was the result of negligence, and not deliberate indifference. This argument also fails. In the context of the ADA, an entity is negligent for failing to act when its "duty to act [was] simply … overlooked, or a complaint [was] reasonably … deemed to result from events taking their normal course." *Duvall*, 260 F.3d at 1139. Applying that standard, this Court has held that an entity was negligent when a reported failure to accommodate was "only sporadic and little different from what other [entities] have experienced." *Ferguson v. City of Phoenix*, 157 F.3d 668, 675 (9th Cir. 1998), *as amended* (Oct. 8, 1998). That is not the case here. Reports of the problem were not "sporadic," because Eaton and other prisoners reported the problem with black mold to ODOC multiple times, to multiple officials, and for many months. *See, e.g.*, ER–9; ER–75-77; ER–101; ER–216–17; ECF–111. And the reported problem was significant—not the result of "events taking their normal course," or an issue that is "little different" from the problems that prisons routinely and to some extent unavoidably encounter. Black mold is a serious health problem, and in fact was regarded as such by some of the prison employees. *See, e.g.*, ER–219; ER–136; ER–130–32; ER–123; ER–201. Their failure to act on that knowledge was deliberate, not negligent, and the record allows Eaton to hold them liable for damages.

Eaton has demonstrated that Defendants were deliberately indifferent at this stage, and the district court should not be affirmed on this ground.

## CONCLUSION

This Court should reverse and remand for further proceedings.

Date: May 5, 2023

                                        */s/ Samuel Weiss*
                                        Samuel Weiss

                                        Rights Behind Bars
                                        416 Florida Avenue NW, #26152
                                        Washington, DC 20001
                                        Attorney for Appellant Aaron Eaton

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,639 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: May 5, 2023

*/s/ Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
Attorney for Appellant Aaron Eaton

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: May 5, 2023

                                                    */s/ Samuel Weiss*
                                                    Samuel Weiss

                                                    Rights Behind Bars
                                                    416 Florida Avenue NW, #26152
                                                    Washington, DC 20001
                                                    Attorney for Appellant Aaron Eaton